NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-5360-15T4

HAKEEM ALLEN,

 Appellant,

v.

NEW JERSEY DEPARTMENT OF
CORRECTIONS,

 Respondent.

________________________________

 Submitted October 25, 2017 – Decided November 14, 2017

 Before Judges Currier and Geiger.

 On appeal from the New Jersey Department of
 Corrections.

 Hakeem Allen, appellant pro se.

 Christopher S. Porrino, Attorney General,
 attorney for respondent (Lisa A. Puglisi,
 Assistant Attorney General, of counsel; Randy
 M. Miller, Deputy Attorney General, on the
 brief).

PER CURIAM

 Hakeem Allen, a State prisoner who at all times relevant to

this appeal was an inmate at East Jersey State Prison, appeals
from the final administrative decision of the Department of

Corrections (DOC) that upheld a hearing officer's decision finding

him guilty of prohibited acts *.005, threatening another with

bodily harm, N.J.A.C. 10A:4-4.1(a)(2)(ii); *.306, conduct which

disrupts or interferes with the security or orderly running of the

correctional institution, N.J.A.C. 10A:4-4.1(a)(2)(xxix); and

imposed sanctions. Allen was found not guilty of prohibit act

*.803/*.002, attempting to assault any person, N.J.A.C. 10A:4-

4.1(a)(1)(ii); -4.1(a)(2)(xxxvii). Allen's charges resulted from

an incident with corrections officers during which he became

aggressive and confrontational and had to be subdued. We affirm.

 On May 8, 2016, while conducting medication watch, Senior

Correction Officers Pyzik and Santana observed Allen arrive to

obtain his medication from the infirmary. Allen was acting

belligerently. When Pyzik questioned him about his behavior,

Allen responded by walking toward the officers aggressively with

raised closed fists, and retorted, "Why, what are you going to do

about it?" The officers, reacting to what they reasonably viewed

to be a threatening situation, secured Allen to the ground and

called in a Code 33 for additional staff to respond to the area

for security reasons. Responding officers handcuffed Allen, who

was then escorted to the infirmary where he was medically cleared

 2 A-5360-15T4
before being placed in prehearing detention. Two officers suffered

minor injuries during the incident.

 On May 9, 2016, Sergeant Rodriquez served Allen with the

disciplinary charges and conducted an investigation. Finding that

the charges had merit, Rodriquez referred the charges to a hearing

officer to conduct a disciplinary hearing. Allen pled not guilty

to the charges and was granted the assistance of counsel

substitute.

 The disciplinary hearing commenced on May 11, 2016, and

concluded on May 19, 2016. On May 16, 2016, Allen requested a

polygraph examination claiming the charges were serious and that

there were issues of credibility. The request for a polygraph

examination was denied in writing by Administrator Patrick Nogan

that same day. In his denial letter the Administrator stated:

 I note that there is no new evidence
 being presented that would necessitate a
 credibility review beyond what occurred at the
 hearing.

 After reviewing the disciplinary
 package, I fail to see how a polygraph would
 add to what is on record.

 Allen requested witness statements from numerous inmates.

His request was granted. In addition, Allen requested

confrontation of Pyzik and Santana, which was also granted.

Confrontation is undertaken by having the inmate propound written

 3 A-5360-15T4
questions to be answered by the witnesses. The questions submitted

by Allen can be fairly described as inartfully drafted and largely

objectionable as to form. The officers attempted to answer the

questions to the extent they were answerable. Allen was afforded

the opportunity to submit supplemental questions but declined to

do so.

 During the hearing, Allen stated, "I never said anything.

The [corrections officer] asked me if I had a problem with his boy

[Lyon]. I'm stressed out about this. This was a bad day that

just got worse."

 Based on her review of the evidence, which included a

disciplinary report, preliminary incident reports, special custody

reports, use of force report, authorization for temporary close

custody, authorization for prehearing disciplinary housing

placement, medical reports, witness statements, polygraph request,

cross-examination questions and responses, and confidential mental

health report, Hearing Officer Nolley found Allen guilty of the

*.005 charge, stating:

 Inmate stated he did not do anything. Inmate
 requested confrontation with 2 officers. The
 confrontation was completed. The polygraph
 request was declined by administration based
 upon the reports and decision that the hearing
 could be completed [without] a polygraph. The
 confrontation did not prove that the inmate
 was not engaged in a confrontation incident
 with staff. Based upon reports, inmate's

 4 A-5360-15T4
 behavior was confrontational and resulted in
 the inmate being subdued and removed[.]
 [C]harge is upheld.

 The hearing officer sanctioned Allen to 180 days'

administrative segregation, 180 days' loss of commutation time,

and ten days' loss of television and radio privileges.

 Hearing Officer Nolley also found Allen guilty of the *.306

charge, stating:

 Inmate stated he didn't do anything. Inmate
 requested confrontation with 2 officers[.]
 They came in [and] completed the confrontation
 [without] any hesitation or reservation. The
 confrontation did not help the inmate prove
 that he was not involved in an incident with
 the officers[.] Inmate requested a polygraph.
 The Administration declined the polygraph
 based upon the reports [and] that the charges
 could be decided on during the hearing. The
 inmate got into a confrontation with the
 [corrections officer] at the medication window
 [and] had to be taken down [and] removed. This
 disrupted the evening schedule. Charge is
 upheld.

 On this charge the hearing officer sanctioned Allen to an

additional 180 days' administrative segregation, 180 days' loss

of commutation time, and twenty days' loss of recreation

privileges.

 The hearing officer found Allen not guilty of the remaining

charge, *.803/*.002, attempting to assault any person.

 5 A-5360-15T4
 On May 20, 2016, Allen filed an administrative appeal. That

same day, Assistant Superintendent Rose upheld the decision of the

hearing officer. This appeal followed.

 On appeal, Allen raises the following issues: (1) the hearing

officer deprived Allen of due process during confrontation and

cross-examination by failing to require Pyzik and Santana to answer

questions; (2) the administrator's denial of Allen's polygraph

request was arbitrary, capricious, and unreasonable; and (3) the

findings of guilt were unsupported by substantial credible

evidence in the record. Allen does not argue that the sanctions

imposed were excessive.

 We preface our analysis by recognizing our review of the

DOC's decision is limited. Reversal is appropriate only when the

agency's decision is arbitrary, capricious, or unreasonable, or

unsupported by substantial credible evidence in the record as a

whole. Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980);

see also In re Taylor, 158 N.J. 644, 657 (1999) (holding that a

court must uphold an agency's findings, even if it would have

reached a different result, so long as sufficient credible evidence

in the record exists to support the agency's conclusions).

However, "'although the determination of an administrative agency

is entitled to deference, our appellate obligation requires more

than a perfunctory review.'" Figueroa v. N.J. Dep't of Corr., 414

 6 A-5360-15T4
N.J. Super. 186, 191 (App. Div. 2010) (quoting Blackwell v. Dep't

of Corr., 348 N.J. Super. 117, 123 (App. Div. 2002)).

 I.

 An incarcerated inmate is not entitled to the full panoply

of rights in a disciplinary proceeding afforded a defendant in a

criminal prosecution. Avant v. Clifford, 67 N.J. 496, 522 (1975).

An inmate is entitled to written notice of the charges at least

twenty-four hours prior to the hearing; an impartial tribunal; a

limited right to call witnesses and present documentary evidence;

a limited right to confront and cross-examine adverse witnesses;

a right to a written statement of the evidence relied upon and the

reasons for the sanctions imposed; and, where the charges are

complex, the inmate is permitted the assistance of a counsel

substitute. Id. at 525-33.

 The procedural protections articulated in Avant and the DOC's

regulations were reaffirmed in Jacobs v. Stephens, 139 N.J. 212

(1995) and McDonald v. Pinchak, 139 N.J. 188, 202 (1995). These

and other procedural requirements for disciplinary charges have

been codified in N.J.A.C. 10A:4-9. The Court found that the

current regulations "strike the proper balance between the

security concerns of the prison, the need for swift and fair

discipline, and the due process rights of the inmates." McDonald,

 7 A-5360-15T4
supra, 139 N.J. at 202. It is undisputed that Allen was afforded

these procedural safeguards.

 Allen contends that his right to confront the witnesses was

abridged because the hearing officer did not require the witnesses

to responsively answer his written questions. We disagree. The

witnesses appeared to have attempted to answer his poorly drafted

questions to the extent they were answerable. Allen declined the

opportunity to submit supplemental questions.

 Allen requested to take a polygraph examination after the

disciplinary hearing had already started. "A polygraph

examination may be requested by the Administrator or designee

. . . [w]hen there are issues of credibility regarding serious

incidents or allegations which may result in a disciplinary

charge." N.J.A.C. 10A:3-7.1(a). To be sure, the prohibited acts

that Allen was found guilty of committing are asterisk offenses,

which are "considered the most serious." N.J.A.C. 10A:4-4.1(a).

 "The polygraph shall not be used in place of a thorough

investigation, but shall be used to assist an investigation when

appropriate." N.J.A.C. 10A:3-7.1(b). "The code regulation's

principal impetus is an investigative tool of the administrator

when serious disciplinary infractions are alleged against an

inmate as opposed to an affirmative right granted to the inmate

 8 A-5360-15T4
himself." Ramirez v. N.J. Dep't of Corr., 382 N.J. Super. 18, 23

(App. Div. 2005).

 An inmate does not have the right to a polygraph test.

Johnson v. N.J. Dep't of Corr., 298 N.J. Super. 79, 83 (App. Div.

1997) (citing N.J.A.C. 10A:3-7.1(c) ("An inmate's request for a

polygraph examination shall not be sufficient cause for granting

the request.")) Instead, N.J.A.C. 10A:31-7.1 "is designed to

prevent the routine administration of polygraphs, and a polygraph

is clearly not required on every occasion that an inmate denies a

disciplinary charge against him." Ramirez, supra, 382 N.J. Super.

at 23-24. "[A] prison administrator's determination not to give

a prisoner a polygraph examination is discretionary and may be

reversed only when that determination is 'arbitrary, capricious

or unreasonable.'" Id. at 24. "[A]n inmate's right to a polygraph

is conditional and the request should be granted when there is a

serious question of credibility and the denial of the examination

would compromise the fundamental fairness of the disciplinary

process." Id. at 20.

 Impairment [of fundamental fairness] may be
 evidenced by inconsistencies in the [senior
 corrections officer's] statements or some
 other extrinsic evidence involving
 credibility, whether documentary or
 testimonial, such as a statement by another
 inmate or staff member on the inmate's behalf.
 Conversely, fundamental fairness will not be
 effected when there is sufficient

 9 A-5360-15T4
 corroborating evidence presented to negate any
 serious question of credibility.

 [Id. at 24.]

 Here, the threat made by Allen was witnessed by two officers.

It resulted in a disruptive altercation that injured two officers.

The record contained adequate evidence for the hearing officer to

determine credibility. Because adequate corroborating evidence

was presented to confirm the officers' credibility, Allen "has

failed to demonstrate that the denial of his request for a

polygraph negated the fundamental fairness of the disciplinary

proceeding which would compel the granting of his request for a

polygraph." Id. at 26. We are satisfied that the administrator

did not abuse his discretion by denying the request for a polygraph

examination.

 Allen also contends that the assistant administrator failed

to provide adequate findings of fact to sustain the decision. We

disagree. "[I]n prison disciplinary matters we have not

traditionally required elaborate written decisions." Blackwell,

supra, 348 N.J. Super. at 123. The disciplinary proceeding was

heard by the hearing officer, who acted as the fact-finder. The

hearing officer issued a written decision setting forth her factual

findings and a reasoned explanation for finding Allen guilty of

prohibited acts *.005 and *.306, which included references to the

 10 A-5360-15T4
evidence she relied on. See id. at 122-23. The administrator was

entitled to rely upon and adopt the hearing officer's findings of

fact and reasoning without expressly setting forth his own summary

of the evidence and reasons for sustaining the charges. By

referring to the hearing officer's decision, the administrator has

satisfied the requirements of the adjudicatory process.

 We are thus satisfied that Allen received all due process

protections afforded to him.

 II.

 We next consider whether there was adequate evidence to find

Allen guilty of threatening another with bodily harm and conduct

which disrupts or interferes with the security or orderly running

of the correctional institution.

 "A finding of guilt at a disciplinary hearing shall be based

upon substantial evidence that the inmate has committed a

prohibited act." N.J.A.C. 10A:4-9.15(a). "Substantial evidence"

is "'such evidence as a reasonable mind might accept as adequate

to support a conclusion.'" Figueroa, supra, 414 N.J. Super. at 192

(quoting In re Pub. Serv. Elec. & Gas Co., 35 N.J. 358, 376

(1961)). In other words, it is "'evidence furnishing a reasonable

basis for the agency's action.'" Ibid. (quoting McGowan v. N.J.

State Parole Bd., 347 N.J. Super. 544, 562 (2002)). "Where there

is substantial evidence in the record to support more than one

 11 A-5360-15T4
regulatory conclusion, it is the agency's choice which governs."

In re Vineland Chem. Co., 243 N.J. Super. 285, 307 (App. Div.)

(citation omitted), certif. denied, 127 N.J. 323 (1990).

 The record demonstrates there was substantial credible

evidence to find Allen guilty of prohibited acts *.005, threatening

another with bodily harm, and *.306, conduct which disrupts or

interferes with the security or orderly running of the correctional

institution. Pyzik and Santana observed Allen acting

belligerently, and when asked what he was doing, Allen responded

by walking towards the officers aggressively with raised closed

fists, saying, "Why, what are you going to do about it?" Allen's

behavior was confrontational and menacing. He confronted Pyzik

in an objectively threatening manner. Given the context in which

it occurred, Allen's conduct created an objective basis for fear

and constituted a threat.

 Because the guilty findings were supported by substantial

credible evidence, the determination that Allen committed

prohibited acts *.005 and *.306 was not arbitrary, capricious, or

unreasonable.

 Allen's remaining arguments lack sufficient merit to warrant

discussion in a written opinion. R. 2:11-3(e)(2).

 Affirmed.

 12 A-5360-15T4