**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1429-18T1

NIGEL LATIMORE,

    Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

    Respondent.

_____

Submitted October 22, 2019 – Decided October 29, 2019

Before Judges Accurso and Rose.

On appeal from the New Jersey Department of Corrections.

Nigel Latimore, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Nicholas A. Sullivan, Deputy Attorney General, on the brief).

PER CURIAM

Nigel Latimore, a State prison inmate, appeals a final disposition of the Department of Corrections (DOC), which upheld two adjudications and sanctions for attempting to obtain drugs, in violation of prohibited acts *.203 and *803. We reverse and remand for a rehearing.

The charges stemmed from a correction officer's interception of two envelopes in the incoming mail, both of which contained two strips of Suboxone, a controlled narcotic opioid. The envelopes were addressed to Latimore and included his inmate number. The senders listed on each envelope were different women's names with addresses in Trenton. Latimore's cell was searched and he was drug tested, with negative results.

Latimore pled not guilty to the charges, and requested a polygraph examination. A DOC administrator denied Latimore's request, noting "[t]he hearing officer at his hearing c[ould] address any issues of credibility."

Through his counsel substitute, Latimore submitted a written statement, which denied the charges and claimed he did not know either sender. His counsel substitute also presented confrontation questions to four DOC officers involved in the incident, including a lieutenant. Through his examination, Latimore established the lack of nexus between him and the senders. For example, the lieutenant acknowledged his investigation revealed the senders had

not visited Latimore. He also stated the senders' names were fictitious and, as such a nexus could not be confirmed. Other investigators acknowledged they were unaware of any information suggesting Latimore "would be expecting mail with [drugs] enclosed therein." It was also "possible" that "any wayward and ill-intentioned inmate or free citizen could have accessed Mr. Latimore's information and then mailed him the letters with Suboxone enclosed therein with the objective of having him placed in Ad[ministrative][]Seg[regation] . . . ."

In two separate handwritten decisions,[1] a hearing officer found Latimore guilty of both counts of attempt to introduce drugs. See N.J.A.C. 10A:4-4.1(a)(1)(xiv) and (2)(xv). From what we can decipher, the hearing officer summarized the evidence supporting her decision as follows:

> Inmate [illegible] he did not know who sent the cards. The cards were addressed to him. The staff who handled the mail were [sic] called in for confrontation. They answered all the questions w/o [sic] [illegible]. The mail was addressed to Latimore w/ [sic] his [inmate] number and complete name on it. Based on reports and court ruling[2] this charge is upheld. . . .

---

[1] The decisions are written in cursive writing. Portions of the decision, apparently pertaining to reasons for postponements, were written sideways in the margins.

[2] Nearly forty documents were entered in evidence, including DOC reports, Latimore's confrontation questions and answers, photographs of the evidence, and our unreported decision in Maldonado v. N.J. Dep't of Corr., No. A-0010-

Consequently, Latimore was sanctioned to permanent loss of contact visits, 365 days of urine monitoring, 125 days of administrative segregation, 125 days loss of commutation time, and 15 days loss of telephone privileges.

Latimore's administrative appeal was denied. The DOC, acting through the assistant superintendent, upheld the hearing officer's decision. The final determination stated, in full: "There was compliance with Title 10A provisions on inmate discipline which prescribe procedural due process safeguard [sic]. The decision of the hearing officer was based on substantial evidence." This appeal followed.

On appeal petitioner raises the following points for our consideration:

> POINT ONE
>
> THE DISCIPLINARY HEARING OFFICER'S GUILTY FINDINGS, AND THE ADMINISTRATOR'S DECISION TO UPHOLD THE [DOC]'S GUI[L]TY FINDINGS OF THE TWO *[.]803/*[.]203 INFRACTIONS, WERE ARBITRARY, CAPRICIOUS, AND UNREASONABLE.
>
> A.   THE DISCIPLINARY HEARING OFFICER'S GUILTY FINDINGS WERE NOT BASED ON

---

15 (App. Div. Dec. 15, 2016). Some of the documents and photographs are difficult to read. The second page of officer M.R.'s answers, purportedly containing questions eleven through twenty-three, was omitted from both parties' appendices on appeal.

SUBSTANTIAL CREDIBLE EVIDENCE IN THE RECORD.

B. THE HEARING OFFICER ERRONEOUSLY PLACED THE BURDEN OF PROOF ON [LATIMORE] TO PROVE THAT HE DID NOT COMMIT THE ALLEGED [PROHIBITED] ACT [SIC].

C. THE [DOC]'S FAILURE TO INVESTIGATE THIS MATTER AND EXPLORE, AT THE VERY LEAST, OTHER POSSIBILITIES, DENIED [LATIMORE] HIS RIGHT TO DUE PROCESS AND A FAIR HEARING.

POINT TWO

THE DENIAL OF [LATIMORE]'S REQUEST FOR A POLYGRAPH EXAMINATION WAS ERRONEOUS AND DENIED HIM HIS RIGHT TO DUE PROCESS.

At the outset, we acknowledge the limited scope of our review. Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 190 (App. Div. 2010). Generally, the decision must not be disturbed on appeal unless it is arbitrary, capricious, or unreasonable, or unsupported by substantial credible evidence. Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980). Substantial evidence has been defined as "such evidence as a reasonable mind might accept as adequate to support a conclusion," or "evidence furnishing a reasonable basis for the agency's action." Figueroa, 414 N.J. Super. at 192 (citation omitted); see also N.J.A.C. 10A:4-9.15(a). Accordingly, "[d]isciplinary actions against inmates

5

must be based on more than a subjective hunch, conjecture or surmise of the factfinder." Figueroa, 414 N.J. Super. at 191.

We have noted "[p]risons are dangerous places, and the courts must afford appropriate deference and flexibility to administrators trying to manage this volatile environment." Russo v. N.J. Dep't of Corr., 324 N.J. Super. 576, 584 (App. Div. 1999). A reviewing court "may not substitute its own judgment for the agency's, even though the court might have reached a different result." In re Stallworth, 208 N.J. 182, 194 (2011) (citation omitted). But, our review is not "perfunctory," nor is "our function . . . merely [to] rubberstamp an agency's decision[.]" Figueroa, 414 N.J. Super. at 191. "[R]ather, our function is 'to engage in a careful and principled consideration of the agency record and findings.'" Ibid. (citation omitted).

To enable us to exercise this function, however, the agency must provide a reasonable record and statement of its findings. Blyther v. N.J. Dep't of Corr., 322 N.J. Super. 56, 63 (App. Div. 1999). "No matter how great a deference we must accord the administrative determination, we have no capacity to review the issues at all unless there is some kind of reasonable factual record developed by the administrative agency and the agency has stated its reasons with particularity." Ibid. (internal quotation marks and citation omitted). "[W]e

insist that the agency disclose its reasons for any decision, even those based upon expertise, so that a proper, searching, and careful review by this court may be undertaken." Balagun v. N.J. Dep't of Corr., 361 N.J. Super. 199, 203 (App. Div. 2003); see also N.J.A.C. 10A:4-9.15 (mandating that a hearing officer specify, on an adjudication form, the evidence relied upon in making a finding of guilt after a disciplinary hearing).

Ordinarily, the hearing officer's partially illegible handwritten decision might have hampered our review. See Johnson v. N.J. Dep't of Corr., 298 N.J. Super. 79 (App. Div. 1997) (recognizing "[t]he illegibility of the record would be a sufficient reason for a remand"). But, most of the remainder of the record, upon which she relied is legible, including the typewritten confrontation questions and answers. Those responses acknowledged the DOC's inability to establish a nexus between Latimore and the senders, whose names were fictitious. Nor did the investigation reveal any information that Latimore was expecting Suboxone in the mail. Importantly, at least one investigator acknowledged anyone could have accessed Latimore's "information."

Notably, no witness for the DOC appeared at the hearing. Accordingly, the hearing officer made no credibility findings. Instead, the hearing officer relied on written statements and documents, none of which provided direct

A-1429-18T1

evidence that Latimore directed the drugs be sent to him.[3] Notably absent from the record is the lieutenant's – or another officer's – investigation report. And, the disciplinary reports simply state strips of suspected controlled dangerous substances were found inside two envelopes that were addressed to Latimore. Those documents do not provide substantial credible evidence that Latimore attempted to bring drugs into the jail. See Figueroa, 414 N.J. Super. at 188 (recognizing that the Department bears the burden of persuasion to sustain a charge of prohibited acts). In essence, although the existence of the drugs and Latimore's full name and inmate number on the envelopes containing them gave rise to suspicion that Latimore sought the drugs, that evidence fell short of establishing Latimore's knowledge.

At the very least, Latimore's written denial statement and the answers elicited from his confrontation question created credibility issues, entitling him

---

[3] The hearing officer also relied on our unpublished decision in Maldonado, slip op. at 4-5, which is not binding on us or "any court." R. 1:36-3. Because the DOC was a party to that appeal, however, the DOC is bound by its holding. See Raymond v. N.J. State Parole Bd., 221 N.J. Super. 381, 384 n.1 (App. Div. 1987) ("While an unpublished opinion does not have stare decisis effect, it is nevertheless binding as against a party, in particular a public party whose conduct is thereby prescribed."). We simply note that the facts of Maldonado, slip op. at 2-3, were inapposite to those of the present matter, e.g., the inmate in Maldonado did not cross-examine witnesses.

A-1429-18T1

to a polygraph examination. See Ramirez v. Dep't of Corrections, 382 N.J. Super. 18, 23-24 (App. Div. 2005) (recognizing a polygraph is not required every time an inmate denies a disciplinary charge, but a "request should be granted when there is a serious question of credibility and the denial of the examination would compromise the fundamental fairness of the disciplinary process"). The hearing officer never made a credibility finding concerning Latimore's denial, despite the administrator's response to Latimore's request for a polygraph that credibility issues would be resolved at the hearing.

In light of the absence of any direct evidence, as acknowledged by the officers, and because Latimore could not negate the inference of knowledge of the forbidden items through any other means, fundamental fairness dictates that he should have been permitted to take a polygraph. See Ramirez, 382 N.J. Super. at 24. Under these particular circumstances, we remand for a polygraph examination. Following the administration of the polygraph, the hearing officer shall examine the evidence anew, and state with particularity – in a typewritten document – the basis of her decision, including an assessment of Latimore's credibility, so that we may entertain a proper review in the event of a further appeal. Blyther, 322 N.J. Super. at 63.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

9

A-1429-18T1