**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3047-21

ISAAC JERDAN,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

Submitted November 27, 2023 – Decided December 8, 2023

Before Judges Sabatino and Chase.

On appeal from the New Jersey Department of Corrections.

Isaac Jerdan, appellant pro se.

Matthew J. Platkin, Attorney General, attorney for respondent (Sara M. Gregory, Assistant Attorney General, of counsel; Patrick J. Misale, Deputy Attorney General, on the brief).

PER CURIAM

Appellant Isaac Jerdan, an inmate in New Jersey State Prison, appeals from an April 26, 2022 final agency decision of the Department of Corrections ("DOC") finding him guilty of the "use of any prohibited substances, such as drugs, intoxicants, or related paraphernalia not prescribed for the inmate . . .," a category F offense under N.J.A.C. 10A:4-4.1(a)(6)(ii) (prohibited act *.204). As a result of the finding, appellant received the following sanctions: ninety days in the restorative housing unit; ninety days loss of commutation time; thirty days loss of recreation privileges; and a referral to a drug diversion program.

Appellant's appeal consists of the following arguments, reprinted verbatim:

> I. THE APPELLANT'S RIGHT TO DUE PROCESS WAS VIOLATED IN NUMEROUS RESPECTS.
>
>> A. THE DEPARTMENT'S ARBITRARY DENIAL OF THE PLAINTIFF'S REQUEST TO OBTAIN VIDEO FOOTAGE FOR HIS DEFENSE VIOLATED HIS RIGHT OF DUE PROCESS.
>>
>> B. THE DHO DENIED THE PLAINTIFF DUE PROCESS WHEN SHE DENIED HIS REQUEST TO HAVE HIS APPROVED NATIVE AMERICAN HERBS TESTED TO DETERMINE WHETHER THEY COULD PROVIDE FALSE-POSITIVE RESULTS FOR K-2 OR K-3.

C. DENIAL OF THE PLAINTIFF'S REQUEST FOR WITNESS STATEMENTS VIOLATED HIS RIGHT TO DUE PROCESS.

D. THE DENIAL OF THE PLAINTIFF'S REQUEST FOR A POLYGRAPH EXAMINATION DENIED HIM HIS RIGHT TO DUE PROCESS.

E. DENYING THE PLAINTIFF'S REQUEST TO REVIEW CUSTODY REPORTS WAS A DENIAL OF HIS RIGHT TO DUE PROCESS.

Having reviewed the record, we conclude there were no due process violations and that the agency's disciplinary findings are based upon substantial credible evidence in the record. Accordingly, we affirm.

I.

Appellant is a Native American who is an enrolled member of the Navajo Nation. As part of his Navajo membership, appellant participates in various religious practices, including a pipe-smoking ritual. This ritual is held weekly under the supervision of DOC staff and involves the smoking of ceremonial herbs purchased by the DOC.

Appellant and other inmates assigned to his institutional job detail were ordered to provide urine for drug testing.[1] Appellant was escorted by Officer O. Virella to provide his sample. He provided the sample, which was then sealed

---

[1] Appellant has not challenged the propriety of the testing order.

A-3047-21

and placed in a bag for on-site testing. The urine registered positive for "K-2/K-3." K-2 is a variation of "synthetic designer drugs that are intended to mimic THC, the main psychoactive ingredient of marijuana." U.S. Dep't of Just., Drug Enf't Admin., Drug Fact Sheet: K2/Spice (October 2022). Pursuant to DOC protocol, appellant's urine sample was transported to a DOC laboratory for further testing. The DOC laboratory confirmed the on-site test's positive reading for K-2/K-3, and appellant was charged with a *.204 infraction.

Appellant requested a disciplinary hearing as well as information to challenge the infraction and demonstrate his innocence. Appellant's additional request for the assistance of counsel substitute was granted. At the beginning of the hearing, appellant requested access to the video footage of the area where he provided his urine sample and Officer Virella sealed and bagged it. Appellant believed this footage might have shown Officer Virella failed to follow appropriate procedures in collecting the sample, which would have led to the sample being void.

Appellant also requested several witness statements from: his mental health counselor, who he believed would testify to his good character and lack of drug use; from the officer assigned to his unit and block, who he believed would testify to his aversion to drug use and lack of social interaction with

inmates; the corrections officer assigned to his job detail, who he believed would testify to the details of his job and his aversion to drug use; the prison chaplain, who he believed would confirm his Navajo membership and the details of his pipe-smoking rituals; and seven inmates, who he believed would all testify to his good character and confirm his aversion to drug use.

At the conclusion of the hearing, the hearing officer adjudicated appellant guilty of the charge. The hearing officer acknowledged the authorized use of natural herbs as part of appellant's Navajo religious practices. However, the hearing officer noted those herbs were only administered through the DOC, which does not permit the purchase or use of CDS for incarcerated persons.

Appellant submitted a disciplinary appeal of the adjudication to the prison's administrator. On April 26, 2022, Assistant Superintendent Christopher Ilg upheld the hearing officer's guilty finding, writing: "[t]he hearing officer's decision was based on substantial credible evidence and compliant with [the] [New Jersey] Administrative [C]ode on inmate discipline which prescribes procedural safeguards." As such, the recommended sanctions were imposed.

This appeal follows.

II.

Appellate review of a final agency decision is limited. Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 190 (App. Div. 2010). We have long recognized "[p]risons are dangerous places, and the courts must afford appropriate deference and flexibility to administrators trying to manage this volatile environment." Russo v. N.J. Dep't of Corr., 324 N.J. Super. 576, 584 (App. Div. 1999). A reviewing court "may not substitute its own judgment for the agency's, even though the court might have reached a different result." In re Stallworth, 208 N.J. at 194 (2011) (quoting In re Carter, 191 N.J. 474, 483(2007)).

Reversal is appropriate only when the agency's decision is unsupported by substantial credible evidence in the record as a whole. Ramirez v. Dep't of Corr., 382 N.J. Super. 18, 23 (App. Div. 2005) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)); see also In re Taylor, 158 N.J. 644, 657 (1999) (holding a court must uphold an agency's findings, even if it would have reached a different result, so long as "sufficient credible evidence in the record supports the agency's conclusions").

The burden rests on the challenging party to show the administrative agency decision was arbitrary, capricious, or unreasonable. McGowan v. N.J.

State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002) (citing Barone v. Dep't of Human Servs., Div. of Med. Assistance & Health Servs., Etc., 210 N.J. Super. 276, 285 (App. Div. 1986)).  In determining whether an agency action is arbitrary, capricious, or unreasonable, we consider whether: (1) the agency followed the law; (2) substantial evidence supports the findings; and (3) the agency "clearly erred" in applying the "legislative policies to the facts."  In re Carter, 191 N.J. 474, 482 (2007) (quoting Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995)).  In addition, an agency's "interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference."  Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

III.

Appellant's arguments all focus on the alleged deprivation of his due process rights.  Inmates in our prisons charged with disciplinary infractions are entitled to limited due process rights, first enumerated by our Supreme Court in Avant v. Clifford, 67 N.J. 496, 525-33 (1975), and codified in DOC regulations, N.J.A.C. 10A:4-9.1 to -9.8.

In a disciplinary proceeding, an inmate is not entitled to "the full panoply of rights" afforded to a defendant in a criminal prosecution.  Avant, 67 N.J. at

7

522 (quoting <u>Morrissey v. Brewer</u>, 408 U.S. 471, 480 (1972)). An inmate is entitled to written notice of charges at least twenty-four hours prior to the hearing; an impartial tribunal; a limited right to call witnesses and present documentary evidence; a limited right to confront and cross-examine adverse witnesses; a right to a written statement of the evidence relied upon and the reasons for the sanctions imposed; and, where the charges are complex, the inmate is permitted the assistance of a counsel substitute. <u>Id.</u> at 525-33.

A.

Appellant first argues the denial of access to video footage from the room where the urine sample was collected constituted a denial of a fair hearing, a fair opportunity to prepare a defense, and a denial of a thorough investigation that should have been conducted pursuant to N.J.A.C. 10A:4-9.5(a) and (e). The DOC argues there is no evidence the video footage would change the outcome of the disciplinary hearing.

N.J.A.C. 10A:4-9.5 specifies the procedures officers should follow when investigating an inmate infraction and what information an inmate might be entitled to. Appellant's reliance on N.J.A.C. 10A:4-9.5(a) and (e) is misguided. Subsection (a) concerns the time frame in which an investigation of an infraction should be conducted and when a disciplinary report should be filed, and

8

subsection (e) concerns the procedures an investigating officer is obligated to follow. Neither subsection cited is relevant to the issue of an inmate's access to video footage.

Access to video footage is not one of the limited due process entitlements afforded to an incarcerated person. Appellant fails to provide sufficient credible evidence that would demonstrate how video footage would change the outcome of this case. Under N.J.A.C. 10A:4-8.4, "[t]he [DHO] or Adjustment Committee shall have the discretion to keep a hearing within reasonable limits and to refuse to permit the collection and presentation of evidence which is not necessary for an adequate understanding of the case." The hearing officer's denial of the request was fully within his discretion, as it was pure speculation that the video recording may help appellant have the urine test voided.

B.

Appellant next argues that determining whether his ceremonial herbs could render a false-positive result for a CDS was beyond the DHO's qualifications. He further argues the DOC's refusal to submit the herbs for testing for potential false-positive readings was a due process violation. Additionally, he asserts the officer abused his discretion by relying on irrelevant

9

facts to find his ceremonial herbs were not considered CDS and that the DOC would not purchase CDS for his use. The DOC refutes these arguments.

Appellant fails to provide any evidence that would suggest a refusal to test ceremonial herbs for triggering false-positive drug test results was an abuse of discretion. The DOC purchases the materials needed for Native American religious practices from companies whose catalogs do not include any items that could be mistaken for a CDS. Further, the hearing officer relied on the initial sample test as well as the subsequent laboratory test, both confirming the positive reading of K-2 /K-3. Appellant fails to provide any evidence that would suggest relying on these tests constituted an abuse of discretion, and he fails to submit any evidence calling into question the DOC's procedures in purchasing, storing, and providing materials for Native American religious practices.

C.

Appellant also asserts the DOC violated his due process rights by denying his request to collect witness statements, by failing to conduct a full investigation into those witness statements, and by failing to submit a report explaining its reasons for the denial of the request. He further asserts this impeded his ability to support his arguments relating to the DOC's violation of the rules on continuity of evidence and the potential for false positives being

10

rendered from his ritual herbs. The DOC argues it was reasonable to deny appellant's request for witness statements because conducting a hearing where he was afforded the ability to cross-examine witnesses, review documents, and present witnesses gave him due process.

An "opportunity for confrontation and cross-examination of the accuser(s) [or] . . . witnesses, if requested shall be provided to the inmate or counsel substitute in such instances where the . . . [h]earing [o]fficer . . . deems it necessary . . ., particularly when serious issues of credibility are involved." N.J.A.C. 10A:4-9.1(a); see also Avant, 67 N.J. at 529-30. DOC regulations enumerate the situations in which such requests may be denied, including if in-person questioning would be irrelevant or likely to produce repetitive testimony. N.J.A.C. 10A:4-9.13(a).

A hearing officer "has the discretion to keep the disciplinary hearing within reasonable limits," N.J.A.C. 10A:4-9.13, and may refuse confrontation and cross-examination under various circumstances, N.J.A.C. 10A:4-9.14(b). An inmate has only a limited right to confront and cross-examine witnesses at a disciplinary hearing. Avant, 67 N.J. at 529-30; see also McDonald v. Pinchak, 139 N.J. 188, 194 (1995) (finding inmate's due process right to call witnesses and present evidence may be "abridged to the extent necessary to accommodate

11

the institutional needs and objectives of prisons"); <u>Johnson v. N.J. Dep't of Corr.</u>, 298 N.J. Super. 79, 83 (App. Div. 1997) (explaining that an inmate is entitled to call witnesses at a disciplinary hearing "unless the [DOC] specifies some justifiable reason for refusing to permit testimony").

Where a hearing officer denies a request by an inmate or counsel substitute to call or cross-examine a witness, "the reasons for the denial shall be specifically set forth" on a designated disciplinary report form. N.J.A.C. 10A:4-9.14(f). The required records provide "prima facie evidence which will enable reviewing authorities . . . and, if necessary, the courts, to determine whether or not there has been a proper exercise of discretion." <u>Avant</u>, 67 N.J. at 532. Here, in the form detailing the adjudication of appellant's disciplinary charge, the reporting officer noted the mental health counselor and patrolling officer for his unit both declined to provide a written statement. The form also noted statements from character witnesses do not negate the objective results of a drug test.

The hearing officer relied on two different test results, both indicating a positive reading for a CDS in appellant's system. No evidence was presented to otherwise suggest the tests were conducted in error. Here, the eleven witness statements speaking to appellant's character and propensity to avoid drugs would

12

not explain away how he tested positive for a CDS. Therefore, the hearing officer was justified in relying on the test results, and no abuse of discretion occurred.

D.

Appellant also contends the DOC's denial of his request for a polygraph examination deprived him of his due process rights. Appellant states the officer's responses to his confrontation questions regarding the urine sample collection procedure were in direct conflict with his own views of the incident and thus warranted the polygraph examination due to the serious issues of credibility that arose. Officer Virella testified the sample was not removed from appellant's presence, but, in fact, he followed Officer Virella as they completed the remaining steps of the drug test sample collection procedure.

"An inmate's request for a polygraph examination shall not be sufficient cause for granting the request." N.J.A.C. 10A:3-7.1(c). "This administrative code section is designed to prevent the routine administration of polygraphs, and a polygraph is clearly not required on every occasion that an inmate denies a disciplinary charge against him." Ramirez, 382 N.J. Super. at 23-24. Thus, "a prison administrator's determination not to give a prisoner a polygraph

examination is discretionary and may be reversed only when that determination is 'arbitrary, capricious or unreasonable.'" Id. at 24.

Here, the hearing officer did not abuse his discretion in denying appellant's request for a polygraph examination. Appellant failed to present any evidence that would warrant further action taken to allow for a polygraph examination to be administered. This issue of credibility was determined by the hearing officer after taking testimony. No evidence or argument has been presented that would reasonably contradict that the positive urine sample belonged to appellant.

### E.

Finally, appellant argues the DOC's denial of his request to review incident reports or special custody reports violated his due process rights and his right to a fair opportunity to prepare a defense. The DOC argues the denial of his request to review special custody reports was proper because no such documents were used during the hearing.

According to N.J.A.C. 10A:4-9.5(h), an "inmate may obtain a copy of inmate witness statements, provided that the [DOC] finds that such a disclosure would not compromise correctional facility safety, security, orderly operation, and goals." Appellant relies on the portion of this statute referring to witness

statements; however, nothing in the record indicates any special custody report was created following this incident. Thus, there was nothing for the DOC to provide.

## IV.

To the extent we have not specifically addressed any remaining arguments, it is because we find them to be without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(D) and (E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3047-21