**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0177-17T3

SHAMSIDDIN ABDUR-RAHEEM,

    Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

    Respondent.

_____

Submitted April 30, 2020 – Decided May 18, 2020

Before Judges Suter and DeAlmeida.

On appeal from the New Jersey Department of Corrections.

Shamsiddin Abdur-Raheem, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Suzanne Davies, Deputy Attorney General, on the brief).

PER CURIAM

Appellant Shamsiddin Abdur-Raheem, an inmate at New Jersey State Prison (NJSP), appeals from the June 12, 2017 final determination of the Department of Corrections (DOC) adjudicating him guilty of prohibited act *.005, threatening another with bodily harm or with any offense against his or her person or his or her property in violation of N.J.A.C. 10A:4-4.1(a)(2)(ii). We affirm.

I.

The following facts are derived from the record. On April 1, 2016, Senior Corrections Officer (SCO) Galileo issued a special custody report stating:

> On the above date and time[,] I . . . completed a cell search of inmate Abdur-Raheem, S#789072. After the inmate was secured back in his cell he stated in a[n] aggressive manner[,] "OK Frederick. You and Christopher want to play games with me?! That's right I have all your information. I know your family is home alone right now while you['re] sitting your lazy ass in the booth all day. I have first and second shifts['] information. I'm going to write administration to get you pigs pulled off my unit. You don't know who you are playing with. My family has connections downtown and in administration." I asked the inmate[,] "how did you get our information?" His response was[,] "It's not rocket science Freddy boy. It's public records. You can google that shit!"

On April 2, 2016, SCO Galileo issued a disciplinary report charging Abdur-Raheem with committing prohibited act *.005 based on the information

in the officer's special report. Corrections Sergeant Haywood conducted an investigation and referred the matter to a disciplinary hearing officer (DHO) for adjudication. During the investigation, SCO Galileo stated in a supplemental report:

> I . . . feel threatened by inmate Abdur-Raheem due to him knowing my personal information which he said he obtained from the State. He also stated to me in a[n] aggressive tone that he knows my family is home alone while my lazy ass is in the booth at work. I do not know what connections he has on the outside or what his family and friends are capable of. He called me by my first name and also said he had all of the first and second shifts['] information. I don[']t know exactly what he has but he sounded confident in what he knows. Depending on what he has I fear for my famil[y's] safety. After he was placed on [prehearing detention] he was placed back in the same cell. For the remainder of the evening when I was on the floor he kept stating[,] "this isn't over Frederick, you'll see!" The following day as soon as I came on shift and walked in the booth he saw me and yelled again, "this isn't over Frederick!" I called the center keeper to get him moved. He was then moved to another unit . . . .

Sergeant Haywood delivered a copy of the charge to Abdur-Raheem, who pleaded not guilty and requested the assistance of counsel substitute.

An initial adjudication of the charge was appealed to this court. We granted the DOC's motion to remand for a new hearing. At the second hearing, the DHO assigned Abdur-Raheem counsel substitute. In addition, the DHO

3

granted Abdur-Raheem's request for written cross-examination of SCO Galileo and SCO Anfuso. The DHO disallowed some of Abdur-Raheem's proposed cross-examination questions as irrelevant or repetitive and rephrased others. Both officers provided written answers to numerous cross-examination questions.

The DHO denied as irrelevant Abdur-Raheem's request for copies of: (1) logbook records that he contended would demonstrate that his cell had been searched on two occasions; and (2) SCO Galileo's disciplinary file. Prior to the rehearing, NJSP Administrator Steven Johnson denied Abdur-Raheem's request for a polygraph examination, noting that "no issues of credibility or new evidence have been determined to warrant its approval administratively."

At the rehearing, Abdur-Raheem argued SCO Galileo was lying and lodged the disciplinary charge as retaliation for his having threatened to sue the officer after the officer searched his cell. Abdur-Raheem provided a written statement to the DHO and called no witnesses.

After hearing the testimony, reviewing the evidence, and considering Abdur-Raheem's arguments, the DHO found Abdur-Raheem guilty of the *.005 charge. The DHO concluded there was sufficient evidence in staff reports and the cross-examination responses of the officers to support the charge and found

A-0177-17T3

"[t]he officer felt threatened by what was said by the [inmate and] feared for his family's safety." After noting the serious nature of the charge, the DHO sanctioned Abdur-Raheem to 180 days in administrative segregation, a 365-day loss of commutation credits, a thirty-day loss of recreation privileges, and a 365-day loss of television and radio privileges.

On June 12, 2017, Assistant Superintendent Amy Emrich upheld the hearing officer's decision and the sanctions imposed. Assistant Superintendent Emrich found Abdur-Raheem had been provided all procedural safeguards to which he was entitled under the Administrative Code and that the sanctions imposed were appropriate.

This appeal followed. Abdur-Raheem argues: (1) the hearing officer did not provide a written statement of the evidence upon which she relied; (2) the DOC's final agency decision was not based on substantial credible evidence; (3) Abdur-Raheem was denied the right to question witnesses; (4) the hearing officer was not impartial; and (5) the DOC abused its discretion when denying Abdur-Raheem's request for a polygraph examination.

II.

Our review of a final agency decision is limited. Reversal is appropriate only when the agency's decision is arbitrary, capricious, or unreasonable, or

5

unsupported by substantial credible evidence in the record as a whole. Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980); see also In re Taylor, 158 N.J. 644, 657 (1999) (holding that a court must uphold an agency's findings, even if it would have reached a different result, so long as sufficient credible evidence in the record exists to support the agency's conclusions). "[A]lthough the determination of an administrative agency is entitled to deference, our appellate obligation requires more than a perfunctory review." Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 191 (App. Div. 2010) (quoting Blackwell v. Dep't of Corr., 348 N.J. Super. 117, 123 (App. Div. 2002)).

"A finding of guilt at a disciplinary hearing shall be based upon substantial evidence that the inmate has committed a prohibited act." N.J.A.C. 10A:4-9.15(a). "Substantial evidence" is "such evidence as a reasonable mind might accept as adequate to support a conclusion." Figueroa, 414 N.J. Super. at 192 (quoting In re Pub. Serv. Elec. & Gas Co., 35 N.J. 358, 376 (1961)). In other words, it is "evidence furnishing a reasonable basis for the agency's action." Ibid. (quoting McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 562 (2002)).

In addition, an inmate is not accorded the full panoply of rights in a disciplinary proceeding afforded a defendant in a criminal prosecution. Avant

v. Clifford, 67 N.J. 496, 522 (1975).  Instead, prisoners are entitled to: written notice of the charges at least twenty-four hours prior to the hearing; an impartial tribunal; a limited right to call witnesses and present documentary evidence; a limited right to confront and cross-examine adverse witnesses; a right to a written statement of the evidence relied upon and the reasons for the sanctions imposed; and, where the charges are complex, the assistance of a counsel substitute.  Id. at 525-33; accord Jacobs v. Stephens, 139 N.J. 212 (1995); McDonald v. Pinchak, 139 N.J. 188 (1995).

Having reviewed the record in light of these precedents, we conclude there is ample evidentiary support for the DOC's final adjudication.  The record contains unequivocal reports from SCO Galileo of the statements made by Abdur-Raheem.  The officer credibly explained that Abdur-Raheem's comments were threatening.  We agree there is only one reason for Abdur-Raheem to profess to know details of the officer's personal life: to impliedly threaten the officer's family.

We also are satisfied Abdur-Raheem received all due process protections to which he is entitled.  We see no abuse of discretion in the DHO's limitation of Abdur-Raheem's proposed cross-examination questions.  The DHO has the authority "to keep the hearing within reasonable limits and to refuse to permit

7

the collection and presentation of evidence which is not necessary for an adequate understanding of the case." N.J.A.C. 10A:4-8.4(b). Pursuant to this authority, the DHO may refuse confrontation and cross-examination when it would be irrelevant, harassing, or likely to produce repetitive testimony. N.J.A.C. 10A:4-9.14(b). That discretion was exercised properly here.

Finally, we have considered, and reject, Abdur-Raheem's argument that he was improperly denied the opportunity to take a polygraph examination. An inmate does not have the right to a polygraph test to contest a disciplinary charge. Johnson v. N.J. Dep't of Corr., 298 N.J. Super. 79, 83 (App. Div. 1997). "An inmate's request for a polygraph examination shall not be sufficient cause for granting the request." N.J.A.C. 10A:3-7.1(c). In fact, N.J.A.C. 10A:3-7.1(c) "is designed to prevent the routine administration of polygraphs, and a polygraph is clearly not required on every occasion that an inmate denies a disciplinary charge against him." Ramirez v. Dep't of Corr., 382 N.J. Super. 18, 23-24 (App. Div. 2005). A "prison administrator's determination not to give a prisoner a polygraph examination is discretionary and may be reversed only when that determination is 'arbitrary, capricious or unreasonable.'" Id. at 24. "[A]n inmate's right to a polygraph is conditional and the request should be granted when there is a serious question of credibility and the denial of the

A-0177-17T3

examination would compromise the fundamental fairness of the disciplinary process." Id. at 20.

> Impairment [of fundamental fairness] may be evidenced by inconsistencies in the SCO's statements or some other extrinsic evidence involving credibility, whether documentary or testimonial, such as a statement by another inmate or staff member on the inmate's behalf. Conversely, fundamental fairness will not be effected when there is sufficient corroborating evidence presented to negate any serious question of credibility.
>
> [Id. at 24.]

Here, Abdur-Raheem's threat was witnessed by SCO Galileo. No witness came forward disputing the officer's version of events. SCO Galileo was consistent in his reporting of Abdur-Raheem's threatening remarks and no evidence was proffered contradicting the officer's account. As a result, we are satisfied the Administrator did not abuse his discretion by denying the request for a polygraph examination.

We have reviewed Abdur-Raheem's remaining arguments and conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION